# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODOLFINA VAZQUEZ RODRIGUEZ,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, CALIFORNIA CITY DETENTION FACILITY,<br><br>Respondent. | Case No. 1:26-cv-02455-KES-SAB-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT RESPONDENT'S MOTION TO DISMISS, DISMISS FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS WITHOUT PREJUDICE, AND GRANT PETITIONER LEAVE TO FILE SECOND AMENDED PETITION<br><br>(ECF Nos. 9, 13) |

Petitioner is an immigration detainee proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## I.

## BACKGROUND

Petitioner is a citizen of Mexico who entered the United States on February 9, 2023 as a B-2 visitor. (ECF No. 9 at 3.[1]) She later remained beyond the period of authorized stay. (ECF No. 9 at 4.) On October 20, 2023, the Orange County Superior Court issued a Protective Custody Warrant for the child, B-S-C-V, under California Family Code § 3134.5. in a Hague Convention child-return proceeding. That warrant directed law enforcement to take the child into protective custody and transfer her to the father, his representative, or a representative of the Orange

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

County District Attorney's Office. On December 12, 2023, a judge signed an order directing the school to release the child to the Orange County District Attorney's Office for transfer to court. Also on December 12, 2023, after trial, the judge ordered that the child be returned to Mexico in the custody of her father. (ECF No. 9 at 5–6.)

Petitioner is married to a United States citizen who filed a Form I-130 on her behalf, and Petitioner also filed a Form I-485 seeking adjustment of status. On September 16, 2025, U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner at a U.S. Citizenship and Immigration Services ("USCIS") interview in Santa Ana, California. ICE then served Petitioner with a Notice to Appear charging her as removable under section 237(a)(1)(B) of the Immigration and Nationality Act as a nonimmigrant overstay. (ECF No. 9 at 4.)

On September 29, 2025, November 6, 2025, and December 3, 2025, the immigration court conducted custody redetermination hearings. (ECF No. 9 at 7.) The Form I-213 states that the Foreign Fugitive Unit ("FFU") had received a lead referral identifying Petitioner as the subject of an arrest warrant issued by the Government of Mexico and that she was "wanted in Mexico for the offense of abduction of the minor by one of the parents." (ECF No. 9 at 4; ECF No. 9-2 at 19.) DHS submitted a documentary package, which "included foreign-prosecutor materials asserting that Petitioner was the subject of an active Mexican arrest warrant and seeking or referencing Interpol-related process," a "September 29, 2025 Guerrero letter [that] stated that Petitioner's arrest warrant remained active and enforceable as of December 13, 2023, that this information had been provided by a judge in the United States of America, specifically in Santa Ana, California, and that its use was authorized in Petitioner's immigration proceedings," an "October 20, 2025 Guerrero archive letter [that] likewise reported that a criminal archive search reflected an arrest warrant issued in file 12160670300429021122," and a ""December 2, 2025 Guerrero letter [that] further stated that ICE authorities at the United States Embassy in Mexico had urgently requested confirmation whether the warrant remained in force because Petitioner had an immigration hearing the next day." (ECF No. 9 at 5.) The FAP alleges that "[o]n information and belief, these were the materials that drove the Government's custody narrative and made prior counsel conclude that a fair bond hearing was not realistically available

unless and until that narrative could first be overcome." (ECF No. 9 at 5.) Accordingly, on all three occasions, Petitioner's bond request was withdrawn without prejudice. (Id. at 7.)

On March 31, 2026, Petitioner filed a petition for writ of habeas. (ECF No. 1.) On April 2, 2026, the Court appointed counsel for Petitioner. (ECF No. 4.) On April 28, 2026, Petitioner filed a first amended petition ("FAP"), asserting that continued detention without any meaningful custody adjudication violates the Fifth Amendment. (ECF No. 9.) On May 5, 2026, Respondents filed a motion to dismiss. (ECF No. 13.) On May 7, 2026, Petitioner filed an opposition to the motion to dismiss. (ECF No. 14.) To date, no reply in support of the motion to dismiss has been filed, and the time for doing so has passed.

**II.**

**DISCUSSION**

Respondent argues that the petition should be dismissed for failure to exhaust administrative remedies. (ECF No. 13 at 2–4.)

> As a prudential matter, habeas petitioners must exhaust available judicial and administrative remedy remedies before seeking relief. 28 U.S.C § 2241; *see also Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), overruled on other grounds by *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 (2006). Courts may require exhaustion as a prudential matter when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal citations and quotations omitted). If a petitioner fails to exhaust prudentially required administrative remedies, then "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).
>
> However, because exhaustion is not jurisdictional, the requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury would result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies." *Aden v. Nielsen*, No. C18-1441RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019).

Singh v. Warden, No. 1:26-CV-00172-JLT-EPG, 2026 WL 1328508, at *3 (E.D. Cal. May 13, 2026).

Here, Petitioner argues that that pursuing administrative remedies would be futile because "the Government's outstanding-warrant / Interpol presentation rendered the custody process functionally unusable before any adjudication could occur"[2] and "[r]e-filing bond under the same posture would predictably reproduce the same problem unless minimum procedural protections are first imposed." (ECF No. 14 at 6.) Petitioner contends:

> At a minimum, a constitutionally adequate custody adjudication in this case would require: timely disclosure of the foreign materials on which the Government relies; reliable translation and basic authentication sufficient for the custody context; a meaningful opportunity to rebut those materials, including an explanation of the underlying Hague and family-court context; and a neutral adjudicator making findings on a record that permits review. Without those protections, telling Petitioner to "go back to court and ask for bond" is no answer at all.

(ECF No. 14 at 6.)

Petitioner had three custody redetermination proceedings on September 29, 2025, November 6, 2025, and December 3, 2025. (ECF No. 9 at 7.) According to the Todd declaration submitted by Petitioner, Petitioner has access to the documents submitted by DHS for those proceedings and counsel has reviewed them. (ECF No. 9-2 at 15.) Petitioner and counsel also have access to the Orange County Superior Court materials that purport to rebut any alleged warrant or Interpol red notice. There is nothing in the record before this Court regarding whether the Orange County Superior Court materials were available to Petitioner's immigration counsel at the time of the previous bond hearings, were presented to the immigration judge at those hearings, and were ignored by the immigration judge. The Todd declaration only states that Petitioner's former immigration counsel explained the "bond petitions were withdrawn in the face of the government's position that the client had an outstanding warrant in Mexico[,]" and Petitioner's current immigration counsel stated, "I believe the bond requests were withdrawn

---

[2] Petitioner explains:

> The foreign materials relied on by DHS asserted, among other things, that a judge in Santa Ana, California had effectively provided or confirmed warrant-related information for use in immigration proceedings. Exh. F. But the Orange County record reflects a Hague Convention child-return proceeding, a California protective-custody warrant for the child, and a December 12, 2023 order returning the child to Mexico with her father. Exhs. I-N. That mismatch is the alleged constitutional defect.

(ECF No. 14 at 5.)

because the attorney was having trouble getting past the 'interpol red letter.'" (ECF No. 9-2 at 15.) Petitioner has not established that at any new bond hearing Petitioner would be unable to present the Orange County Superior Court materials to the immigration judge and would not be given the opportunity to explain the underlying Hague and family-court context. Based on the foregoing, the Court finds that Petitioner has not shown that exhausting administrative remedies would be inadequate or futile. The immigration court is best positioned "to generate a proper record and reach a proper decision." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007).

Based on the foregoing, the Court recommends granting Respondent's motion to dismiss and dismissing the petition without prejudice. The Court further recommends granting Petitioner leave to file a second amended petition. See Ngugi v. Lyons, No. 1:25-CV-01783-KES-EPG (HC), 2026 WL 946905 (E.D. Cal. Apr. 8, 2026).

## III.

## RECOMMENDATIONS & ORDER

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. Respondent's motion to dismiss (ECF No. 13) be GRANTED;
2. The first amended petition for writ of habeas corpus (ECF No. 9) be DISMISSED without prejudice; and
3. Petitioner be granted leave to file a second amended petition.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.

Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 4, 2026**

STANLEY A. BOONE
United States Magistrate Judge